UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Ted and Kim Particka,                              Case No. 06-46162
                                                   Chapter 13
                              Debtors.             Hon. Phillip J. Shefferly
_____/

**OPINION SUSTAINING CREDITOR'S OBJECTION TO
CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

I. <u>Introduction</u>

This opinion involves the interpretation and application of the so called "hanging paragraph"

that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added

to the end of § 1325(a)(9) of the Bankruptcy Code. The Debtors in this case propose a Chapter 13

plan that provides for them to surrender a 2004 Chrysler Sebring to DaimlerChrysler Financial

Services Americas LLC ("DaimlerChrysler") under § 1325(a)(5)(C) of the Bankruptcy Code in full

satisfaction of DaimlerChrysler's secured claim, despite the fact that the vehicle has a value that is

unquestionably less than the amount of that secured claim. DaimlerChrysler has objected to that

treatment of its secured claim. For the reasons that are set forth in this opinion, the Court sustains

DaimlerChrysler's objection to confirmation of the Debtors' plan.

II. <u>Jurisdiction</u>

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core

proceeding under 28 U.S.C. § 157(b)(2)(L).

III. <u>Facts</u>

The facts in this case are straightforward and undisputed. On November 19, 2003, the Debtors purchased a 2004 Chrysler Sebring. DaimlerChrysler financed the purchase of the vehicle and holds a perfected security interest in the vehicle. On May 16, 2006, the Debtors filed this Chapter 13 case. According to DaimlerChrysler's proof of claim, the Debtors owed $11,791.92 to DaimlerChrysler for the vehicle on the date of the petition. According to DaimlerChrysler, the NADA guide shows the wholesale value of this vehicle to be $8,250.[1] Absent this bankruptcy case, and assuming the NADA wholesale value, if DaimlerChrysler repossessed the vehicle and sold it, it would be left with a deficiency balance of approximately $3,500, which it could then enforce against the Debtors who would remain liable for this deficiency under the purchase agreement and applicable Michigan law.[2] On August 27, 2006, the Debtors filed a plan in this case that states that the Sebring will be surrendered to DaimlerChrsyler "in full satisfaction of debt." A hearing was scheduled on confirmation of the plan on September 19, 2006 which was adjourned until October 24, 2006 because of outstanding objections to the plan. In the meanwhile, the Debtors filed an amended plan on October 19, 2006, that again states that they intend to "surrender" the vehicle to DaimlerChrysler "in full satisfaction of debt." DaimlerChrysler objects to this treatment. The Debtors assert that the treatment prescribed in their plan for DaimlerChrysler comports with § 1325(a)(5)(C) and therefore the Court must confirm their plan. DaimlerChrysler asserts that even

---

[1] The Debtors do not appear to contest this value. In fact, on their schedule B filed in this case, they actually listed the vehicle as having an even lower value of $6,210.

[2] <u>See</u> Mich. Comp. Laws Ann. § 440.9615(4) (providing for the application of proceeds from a secured party's disposition of the collateral and that "[t]he obligor is liable for any deficiency").

if the Debtors may surrender the Sebring to DaimlerChrysler, because the vehicle has a value less than the full debt owed to DaimlerChrysler, the surrender cannot be in full satisfaction of the debt and, instead, DaimlerChrysler is still entitled to be paid the amount of any deficiency balance that exists after DaimlerChrysler has disposed of the vehicle and applied the proceeds to its secured claim.

## IV.  Analysis

### A.  Section 1325(a)(5) and the Treatment of Secured Claims Under Chapter 13

Prior to BAPCPA, § 1325(a)(5) of the Bankruptcy Code provided that a debtor's Chapter 13 plan must provide one of three treatments for each allowed secured claim.  Under § 1325(a)(5)(A) a plan could be confirmed if the holder of the allowed secured claim accepted the plan.  Under § 1325(a)(5)(B) a plan could be confirmed if the plan provided that the holder of the allowed secured claim received property distributed under the plan having a value not less than the allowed amount of the secured claim.  In other words, a debtor could provide for payment of the allowed secured claim by a stream of payments having a value as of the effective date not less than the amount of the allowed secured claim.  Under § 1325(a)(5)(C) a plan could be confirmed if it provided that the debtor surrendered the property securing the allowed secured claim to the holder of such claim.

BAPCPA preserves the three options permitted by § 1325(a)(5) for a Chapter 13 plan's treatment of an allowed secured claim, but with some modifications.  Under § 1325(a)(5)(A), a Chapter 13 plan may still provide for a treatment that is accepted by the holder of an allowed secured claim.  Under § 1325(a)(5)(B), a Chapter 13 plan may still provide for a debtor to retain collateral that secures an allowed secured claim and pay the holder of the allowed secured claim over a period of time, but now with more stringent and specific requirements for such payments, and

more explicit provisions regarding retention of the lien in such circumstances by the holder of the allowed secured claim. Finally, under § 1325(a)(5)(C), a Chapter 13 plan may still provide for a debtor to surrender to the holder of an allowed secured claim, the property that secures such claim. Although § 1325(a)(5)(B) contains new and more specific provisions pertaining to that option, §§ 1325(a)(5)(A) and (C) were not changed by BAPCPA.

## B. BAPCPA Introduces the Hanging Paragraph

The change made by BAPCPA that gives rise to the dispute in this case is not found within § 1325(a)(5) and its three permitted options for treatment of an allowed secured claim, but instead is found in a new provision created by BAPCPA in § 1325(a)(9). The first sentence of this new provision contains a requirement that a debtor must file his or her federal, state, and local income tax returns as a prerequisite to confirmation of a Chapter 13 plan. This portion of new § 1325(a)(9) is not at issue here. In a curious display of randomness, the second sentence of § 1325(a)(9) has nothing to do with the filing of tax returns, but instead creates in § 1325(a)(9) a new provision that applies only to § 1325(a)(5) and only to certain types of secured claims. Because it is both unnumbered and unrelated to the first part of § 1325(a)(9) pertaining to tax returns, the second sentence of this new provision has been given the unflattering title of the "hanging paragraph." It reads as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Although the hanging paragraph is ripe with issues, most of them are not germane here. In

this case the Debtors and DaimlerChyrsler agree that DaimlerChrysler is a "910 creditor" subject to the hanging paragraph. The parties agree that the Debtors in this case purchased the Sebring within 910 days of the date the Debtors filed their Chapter 13 petition, and that the collateral for DaimlerChrysler's debt consists of a motor vehicle that was acquired for the Debtors' personal use. Further, the Debtors and DaimlerChrysler agree that the hanging paragraph now makes § 506 inapplicable to the treatment of 910 secured claims under § 1325(a)(5). Finally, they both agree that the Debtors may surrender the Sebring to DaimlerChrysler under § 1325(a)(5)(C). Here is where they part ways in this case: The Debtors assert that because § 506 is now inapplicable to 910 creditors under § 1325(a)(5), they may surrender the Sebring to DaimlerChrysler under § 1325(a)(5)(C) and thereby fully satisfy DaimlerChrysler's secured claim, leaving DaimlerChrysler without an ability to collect any deficiency in the event that the proceeds from DaimlerChrysler's subsequent disposition of the vehicle are insufficient to pay DaimlerChrysler's $11,791.92 claim in full. On the other hand, DaimlerChrysler asserts that even though the hanging paragraph renders § 506 inapplicable to the treatment of 910 secured claims § 1325(a)(5), and may have the effect of preventing it from asserting an unsecured claim for any deficiency, it still has the right to be paid any deficiency as part of its allowed secured claim.

## C. The Claims Allowance and Valuation Processes

A review of how § 506 works generally and how it previously affected § 1325(a)(5) pre-BAPCPA is helpful in understanding how the hanging paragraph changes § 1325(a)(5) by making § 506 inapplicable to the treatment of 910 creditors. That requires a threshold understanding of how claims are allowed under the Bankruptcy Code, whether pre- or post-BAPCPA.

Section 101(5) defines a "claim" as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Because the Debtors purchased the Sebring from DaimlerChrysler and promised to pay for it, DaimlerChrysler has a right to payment that is enforceable under applicable Michigan law. DaimlerChrysler therefore has a claim under § 101(5). Because DaimlerChrysler has a lien upon the Sebring to secure payment of the purchase price, DaimlerChrysler holds a security interest as defined by § 101(51) of the Bankruptcy Code. The proof of claim filed by DaimlerChrysler in this case indicates that its claim is secured by the Sebring.

Section 502 of the Bankruptcy Code provides for the allowance of claims that are filed in a bankruptcy case. Section 502(a) provides that a claim filed by a creditor is deemed allowed unless a party in interest objects. Section 502(b) provides for the disallowance of a claim if one of nine enumerated circumstances is shown to exist. The validity and enforceability of claims generally is determined by application of non-bankruptcy law, except as otherwise specifically provided by 502(b). See Butner v. United States, 440 U.S. 48, 54-55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); Tate v. National Acceptance Co. of America (In re Leeds Homes, Inc.), 332 F.2d 648, 649 (6th Cir. 1964) (holding "that the preliminary question of whether or not a claim exists . . . must be determined with reference to state law," "to which federal law is then applied" in determining the allowability of that claim) (citing in part Vanston Bondholders Protective

Committee v. Green, 329 U.S. 156 (1947)) (other citations omitted). "Section 502(b) sets forth the exclusive grounds for disallowance of claims" under the Bankruptcy Code. Perron v. eCast Settlement Corp. (In re Perron), No. 05-8075, 2006 WL 2933827 at *4 (B.A.P. 6th Cir. Oct. 13, 2006). In this case, no party in interest has filed any objection to DaimlerChrysler's proof of claim for $11,791.92. It is therefore deemed allowed under § 502(a).

Although § 502 determines whether a claim will be allowed, there is another section of the Bankruptcy Code that determines the extent to which an allowed claim will be treated as secured when the property securing the claim becomes property of the bankruptcy estate. This is § 506(a) and it provides as follows:[3]

> (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

Absent a bankruptcy case, it is generally, if not universally, the law that a secured creditor may foreclose upon its security interest under non-bankruptcy law, apply the foreclosure sale proceeds to its debt and, to the extent that its claim is for a debt with full recourse, the debtor

---

[3] Section 506(a)(1) remains unchanged by BAPCPA. Section 506(a)(2) was added by BAPCPA.

remains liable for any deficiency balance, which the creditor may then collect from the debtor as an unsecured claim. However, upon the filing of a bankruptcy case, if the property securing the debt becomes property of the bankruptcy estate under § 541, then § 506 operates to determine the extent to which the creditor's allowed claim will be treated as a secured claim and the extent to which the creditor's allowed claim will be treated as an unsecured claim under the Bankruptcy Code. The determination of the amount of the secured portion of the allowed claim and the unsecured portion of the allowed claim under § 506 is based upon the value of the creditor's interest in the estate's interest in the property that secures the creditor's claim. See In re Maddox, 200 B.R. 546, 551 (D. N.J. 1996) (applying a two-step analysis under § 506(a), the first step being the determination of the estate's interest in the property and the second step "requir[ing] the determination of the value of the creditor's interest in the estate's interest in the subject property"); In re Paul, 83 B.R. 709, 714 (Bankr. D. N.D. 1988) (finding that "a creditor's secured claim is limited by the amount of the value of the estate's interest in the collateral" and "[i]f the estate has no interest in specific property, a creditor does not receive a secured claim in the amount of the value of the property") (citations omitted). Section 506 essentially bifurcates a secured creditor's claim into secured and unsecured portions, based upon the value of the collateral for the debt, when the bankruptcy estate has an interest in the collateral that secures the debt.

The court in In re Brooks, 344 B.R. 417 (Bankr. E.D. N.C. 2006) contrasted §§ 502 and 506. Section 506 is limited to "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . ." This

> part of the statute acknowledges that a claim may be allowed and secured outside of § 506 by its reference to an allowed claim that is already secured "by a lien on property." If such a claim falls under § 506, its value will be determined by subsection (a). . . . If an allowed secured claim does not fall under § 506, however,

-8-

the only consequence is that it will not have to pass the § 506 valuation requirement.

Id. at 420 (citations omitted). The Brooks court went on to discuss Supreme Court precedent, finding that

> [t]he Court's interpretation of § 506(a) [in Associates Commercial Corp. v. Rash, 520 U.S. 953 (1997)] as strictly a method of valuing an allowed secured claim, rather than a definitional provision, is also consistent with its holding in Dewsnup v. Timm, where the Court found that the term, "allowed secured claim" in § 506(d) was not defined by § 506(a). The Dewsnup Court held that a claim was an "allowed secured claim" because it was allowed under § 502 and secured by a lien.

Id. at 421 (citing Dewsnup, 502 U.S. 410, 417 (1992)).

Prior to BAPCPA, the application of § 506 was frequently used by Chapter 13 debtors who wished to retain a vehicle, to bifurcate a secured creditor's claim into secured and unsecured portions, based upon the value of the vehicle. In those Chapter 13 cases where a debtor did not reach an agreement with a secured creditor for treatment of its secured claim under § 1325(a)(5)(A), and where the debtor did not wish to surrender the vehicle to the secured creditor under § 1325(a)(5)(C), the debtor could retain the vehicle, use § 506 to bifurcate the secured and unsecured portions of the claim, and then use § 1325(a)(5)(B) to pay the creditor what was commonly referred to as the "cram-down" amount (i.e., the value of the collateral under § 506). This left the creditor to assert the deficiency portion as an unsecured claim. Section 506 is the substantive provision for valuing secured claims, and Fed. R. Bankr. P. 3012 provides the procedural mechanism for the court to "determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim . . . ." This process of cramming down the secured portion of a claim was widely used by Chapter 13 debtors pre-BAPCPA to retain a financed vehicle by paying only the depreciated value of the vehicle instead of the full debt.

-9-

## D. The Parties' Positions

If there is one thing that the Debtors and DaimlerChrysler agree on, it is that the hanging paragraph prevents a post-BAPCPA debtor from using § 506 and § 1325(a)(5)(B) in combination to pay the cram down value and still retain the collateral. What they disagree on is what happens when a post-BAPCPA debtor now surrenders a vehicle to an under-secured 910 creditor under § 1325(a)(5)(C), which itself is unchanged by BAPCPA.

The Debtors contend that because § 506 no longer applies to allowed secured claims of 910 creditors under § 1325(a)(5), their surrender of the Sebring is the end of the story. Because DaimlerChrysler can no longer use § 506 to bifurcate its claim into secured and unsecured portions because of the hanging paragraph, it has no unsecured claim for any deficiency and, therefore, the Debtors have complied with § 1325(a)(5). They need not do anything further. They assert that this is the logical corollary of the application of the hanging paragraph to § 1325(a)(5)(B). In other words, if the Debtors retained the Sebring, they concede that they would have to pay off the entire $11,791.92 debt as an allowed secured claim in accordance with § 1325(a)(5)(B) because bifurcation based upon collateral value is no longer available to them under § 506. Essentially arguing that what is good for the goose is good for the gander, the Debtors reason that if DaimlerChrysler now has a fully secured allowed claim for $11,791.92 that must be paid under § 1325(a)(5)(B) upon retention of the vehicle, then it necessarily follows that DaimlerChrysler is considered to also have a fully secured allowed claim for $11,791.92 that by definition must be satisfied upon surrender of the vehicle under § 1325(a)(5)(C), even though DaimlerChrysler will only realize $8,250 when it subsequently sells the vehicle. DaimlerChrysler argues that this result is both absurd and inconsistent with legislative history, which shows that the hanging paragraph was

intended to elevate and protect the rights of secured creditors, not permit their rights to be diminished.

E. <u>Application of the Hanging Paragraph to Surrender Under § 1325(a)(5)(C)</u>

With a year of BAPCPA behind us, there is now a developing body of law regarding the hanging paragraph. There are several cases that have ruled in favor of the position espoused by the Debtors. The following cases all hold that surrender of a vehicle to a 910 creditor under § 1325(a)(5)(C) now constitutes full satisfaction of the allowed secured claim. <u>In re Pool</u>, ___ B.R. ___, 2006 WL 2801934 (Bankr. D. Or. 2006); <u>In re Nicely</u>, 349 B.R. 600 (Bankr. W.D. Mo. 2006); <u>In re Evans</u>, 349 B.R. 498 (Bankr. E.D. Mich. 2006); <u>In re Osborn</u>, 348 B.R. 500 (Bankr. W.D. Mo. 2006); <u>In re Payne</u>, 347 B.R. 278 (Bankr. S.D. Ohio 2006); <u>In re Brown</u>, 346 B.R. 868 (Bankr. N.D. Fla. 2006); <u>In re Sparks</u>, 346 B.R. 767 (Bankr. S.D. Ohio 2006); <u>In re Ezell</u>, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); <u>In re Bayless</u>, No. 06-31517, 2006 WL 2982101 (Bankr. E.D. Tenn. Oct. 18, 2006); <u>In re Long</u>, No. 06-30651, 2006 WL 2090246 (Bankr. E.D. Tenn. July 12, 2006).

Two cases support DaimlerChrysler's view that it is still entitled even after surrender to payment of a deficiency claim: <u>Dupaco Community Credit Union v. Zehrung</u> (<u>In re Zehrung</u>), ___ F. Supp. 2d ___, 2006 WL 3059908 (W.D. Wis. 2006); <u>In re Duke</u>, 345 B.R. 806 (Bankr. W.D. Ky. 2006).

Regardless of their outcome, the cases that have considered the hanging paragraph uniformly acknowledge that the starting point in deciding the issue before the Court is the statutory language itself. <u>See</u> <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text."). If the statute is unambiguous, there is no need for the Court to inquire beyond the language of the statute. <u>Chrysler Corp. v. Commissioner</u>, 436

-11-

F.3d 644, 654 (6th Cir. 2006) ("If the text of the statute may be read unambiguously and reasonably, our inquiry is at an end.") (internal quotation marks and citation omitted). It is only in those instances where the language is ambiguous or the rare cases where literal interpretation of the statute would produce an absurd result that the Court should consider resort to legislative history to construe the language. Id. at 654-55 ("Only when our reading results in ambiguity or leads to an unreasonable result, may we look to the legislative history.") (citation omitted).

Despite the awkward insertion of the hanging paragraph in § 1325(a)(9), its language is unambiguous insofar as its reference to § 506 is concerned. It plainly states that with respect to 910 creditors, § 506 does not apply to § 1325(a)(5) of the Bankruptcy Code. It says "for purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph . . . ." That part of the hanging paragraph could not be clearer. Therefore, the Court concludes that resort to legislative history is unnecessary to resolve the dispute in this case. Rather, the Court is able to resolve this dispute by applying the statute literally as written.

The hanging paragraph's declaration that § 506 no longer applies to 910 creditors under § 1325(a)(5) only causes a change in the law to the extent that pre-BAPCPA § 506 ever had any application to § 1325(a)(5). If a pre-BAPCPA debtor retained a vehicle and proposed to pay the creditor's allowed secured claim under § 1325(a)(5)(B), then § 506 applied to determine the amount of that allowed secured claim by reference to the value of the vehicle because the estate had an interest in the retained vehicle. The application of § 506 in permitting a debtor to retain a vehicle under § 1325(a)(5)(B) by paying only the cram down value is now barred, at least as it applies to 910 creditors. Payment of the cram down amount and retention of the vehicle is no longer permissible with respect to 910 creditors.

-12-

On the other hand, the surrender of collateral changes the parties' interests in the property and consequently the impact of § 506. As explained earlier in this opinion, § 506(a) applies by its terms only to "an allowed claim of a creditor secured by a lien on property *in which the estate has an interest . . . .*" 11 U.S.C. § 506(a) (emphasis added). When a pre-BAPCPA debtor surrendered property to a secured creditor under § 1325(a)(5)(C), did the estate continue to have an interest in the property upon surrender such that the bifurcation process of § 506 remained applicable? Or, did surrender cause the estate's interest in the surrendered property to terminate, such that § 506(a) on its face was no longer applicable. The term "surrender" is not defined under the Bankruptcy Code. In <u>In re White</u>, 282 B.R. 418 (Bankr. N.D. Ohio 2002), the court explored the term and interpreted "surrender" under § 1325(a)(5)(C) as meaning to "yield, render up," to "return and relinquish[ ] possession or control to the holder of a claim." <u>Id.</u> at 421-22 (internal quotation marks and citation omitted). The court went on to explain that:

> [s]urrender in that context [a non-purchase-money lien securing a claim for money in a chapter 13 case] is perhaps best viewed as the relinquishing of any legal claim of the debtor and, once the plan is confirmed, *of the debtor's bankruptcy estate* to the collateral. It functions as both the debtor's consent to relief from stay and with respect to real property and personal property that is subject to certificates of title, estoppel of the right to defend in any foreclosure proceeding or a prospective confession of judgment in any such case.

<u>Id.</u> at 422 (emphasis added). This Court agrees with the <u>White</u> court's view of surrender. Accordingly, upon confirmation of a Chapter 13 plan providing for surrender under § 1325(a)(5)(C), the estate no longer has an interest in the collateral. Although <u>In re White</u> is a pre-BAPCPA case, as noted above, BAPCPA did not change § 1325(a)(5)(C) and its use of the term surrender.

Section 506 essentially provides a method of valuing collateral to determine the amount of an allowed secured claim when the estate has an interest in the property: "An allowed claim of a

-13-

creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." If the estate has no interest in the property that secures a claim, there is no reason to use the valuation process of § 506 to determine the amount of the secured claim. Once the estate has no interest in the property, a secured creditor is free to foreclose upon its security interest under applicable non-bankruptcy law and apply the proceeds of sale of the collateral to its claim. The creditor, of course, still retains its right to an allowed unsecured deficiency claim against a debtor under § 502 of the Bankruptcy Code if the debtor remains liable for the deficiency under applicable non-bankruptcy law. In other words, the bifurcation process of § 506 does not, and never did, apply to determine a secured and unsecured portion of a secured creditor's allowed claim where the estate does not have an interest in the property securing such claim. Once a debtor surrenders property to a secured creditor, there is no longer any reason to apply § 506(a) to determine the allowed amount of such creditor's secured claim because the estate no longer holds an interest in the property.

By rendering § 506 inapplicable to § 1325(a)(5), the hanging paragraph did work a change in the law with respect to 910 creditors, but only with respect to debtors who retain the collateral securing their debt. Because § 506 does not apply to a vehicle surrendered under § 1325(a)(5)(C), the specific direction of the hanging paragraph that § 506 no longer apply to § 1325(a)(5) does not cause any change in the outcome where a debtor surrenders a vehicle under § 1325(a)(5)(C) to a 910 creditor and the estate no longer retains an interest in such vehicle. While it might have been more precise for the hanging paragraph to state that as to 910 creditors § 506 no longer applies to

-14-

§ 1325(a)(5)(B),[4] because that was all it has ever applied to, the effect of the hanging paragraph's statement that § 506 no longer applies to § 1325(a)(5) creates the same result. The result is that a debtor cannot retain a 910 vehicle under § 1325(a)(5)(B) by paying a cram down value determined by the bifurcation process of § 506. That is a significant change. But the hanging paragraph causes no change when a debtor surrenders a vehicle to a 910 creditor under § 1325(a)(5)(C). Prior to BAPCPA, § 506 did not bifurcate a secured creditor's claim upon surrender, nor does it do so post-BAPCPA. Upon surrender, the 910 secured creditor still is entitled to enforce its right to payment and, after disposition of the collateral, that right to payment can still be filed and allowed as an unsecured deficiency claim under § 502. There is nothing in the hanging paragraph that somehow disallows an unsecured deficiency claim of a 910 creditor whose debt was a full recourse obligation under non-bankruptcy law and whose depreciated collateral has been surrendered to it by a Chapter 13 debtor under § 1325(a)(5)(C).

The Court recognizes that the weight of authority is in favor of the Debtors' position. It is tempting to follow the trend. But on close inspection, those cases seem to proceed from the incorrect assumption that it is only somehow because of § 506 that an under-secured 910 creditor has a right to pursue a deficiency claim. For example, in In re Ezell, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), the court stated that "[b]ecause application of § 506(a) is entirely removed from the picture, there can be no deficiency balance, either secured or unsecured, and surrender satisfies an allowed secured claim in full." Id. at 342.

---

[4] It would have made even more sense to have included the hanging paragraph in § 1325(a)(5)(B) instead of appending it to § 1325(a)(9).

-15-

The only two published cases to date that have rejected the Debtors' position are In re Duke and In re Zehrung. The court in Duke did so based on its conclusion that the hanging paragraph is ambiguous. In re Duke, 345 B.R. 806, 809 (Bankr. W.D. Ky. 2006) (citation omitted). From there, the Duke court looked to legislative history for guidance. Acknowledging that the legislative history was "not expansive," the Duke court nonetheless found that it did not support the position of the debtors in that case. Id. However, as explained earlier in this opinion, the Court does not consider the hanging paragraph to be ambiguous. Therefore, resort to even the scant legislative history that exists is unnecessary.

The Zehrung court reached the same conclusion as Duke but took a different path to get there. Dupaco Community Credit Union v. Zehrung (In re Zehrung), ___ F. Supp. 2d ___, 2006 WL 3059908 (W.D. Wis. 2006). First, the court observed that the phrase "'allowed secured claim' in § 1325[(a)](5) is used in the sense that the claim is allowed under § 502 and secured by some collateral, not in the § 506 sense of the term." Id. at *3. The Zehrung court then explained that

> [a] creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim. Section 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender. Rather, when collateral is surrendered pursuant to § 1325[(a)](5)(C) the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9-610 to 9-624. The creditor's rights being unmodified by § 506, it is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due.

Id. (citation omitted).

This Court agrees with the Zehrung court. As explained above, the right to pursue a deficiency claim derives from the recourse nature of an obligation under non-bankruptcy law after

-16-

disposition of collateral.[5]  Far from somehow *creating* a deficiency claim for an undersecured

creditor, § 506(a) merely *allocates* the undersecured creditor's claim into secured and unsecured

portions when the estate has an interest in the property.  By definition, "surrender" terminates the

estate's interest in the property, thereby rendering § 506(a) entirely inapplicable.  Because a recourse

promise to pay permits an under-secured creditor to pursue any deficiency that exists after

disposition of its collateral under non-bankruptcy law, the under-secured creditor retains this right

under § 502 after surrender. In this Court's view, § 506 did not apply previously, nor does it apply

now, when a Chapter 13 debtor terminates the estate's interest in property that serves as collateral

by surrendering that collateral to a secured creditor.  Upon receiving a surrender of its collateral, the

secured creditor has received one of the three permitted treatments under § 1325(a)(5).  But it does

not follow from that premise that the creditor somehow loses the right to file and have allowed under

§ 502 as an unsecured claim the deficiency balance that remains unpaid, and that is otherwise

enforceable under non-bankruptcy law, after disposition of the collateral and application of the

proceeds to the debt.  The hanging paragraph does not by its plain terms deprive DaimlerChrysler

of the right to an allowed unsecured deficiency claim in this case under § 502 if it is not paid in full

upon disposition of the Sebring after the Debtors surrender the Sebring to it.

## F. Other Considerations

Aside from the plain language of the statute, there are a number of additional reasons that

also compel the Court to reject the Debtors' position in this case.  First, to adopt the position of the

Debtors and deprive 910 creditors of their right to assert a deficiency as an allowed unsecured claim

---

[5] See Citizens National Bank of Cheboygan v. Mayes, 350 N.W.2d 809 (Mich. Ct. App. 1984); Jones v. Morgan, 228 N.W.2d 419 (Mich. Ct. App. 1975).

upon surrender of their collateral would constitute a sweeping and major change in the law and one which substantially impairs the rights of 910 secured creditors. Although resort to legislative history is unnecessary to resolve the issue before the Court because the statute is unambiguous, it is worth noting that there is not the slightest suggestion in the legislative history to the hanging paragraph that it was intended to somehow convert recourse claims of 910 creditors into non-recourse claims upon surrender and prevent them from asserting deficiency claims where their collateral has depreciated below the amount of the debt. To the contrary, what little legislative history does exist tends to suggest that the hanging paragraph was designed to elevate the rights of 910 creditors by preventing a Chapter 13 debtor from *retaining* a vehicle and paying only its crammed down depreciated value instead of paying the full amount of the recourse debt.

Second, BAPCPA made no change to § 1325(a)(5)(C) itself. The language is the same now as pre-BAPCPA. Congress is presumed to have known that a surrender of property under this section has never been held to extinguish an allowed claim of a secured creditor. See Dewsnup v. Timm, 502 U.S. 410, 419 (1992) (refusing to interpret § 506(d) as allowing chapter 7 debtors to void an undersecured mortgage lien, finding that Congress enacted the Bankruptcy Code "in full understanding" of settled law that liens pass through bankruptcy unaffected, and noting that "[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate" and "this Court has been reluctant to accept arguments that would interpret the Code . . . to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history") (internal quotation marks and citations omitted); Keene Corp. v. United States, 508 U.S. 200, 209 (1993) ("[W]e do not presume that [a] revision worked a change in the underlying substantive law unless an intent to make such [a] chang[e] is clearly expressed.") (internal quotation marks and citations

omitted).

> [A]s a general rule, where existing legislation on a particular subject has been systematically revised and restated in a comprehensive general statute, . . . subsequent enactments touching that subject are to be construed and applied in harmony with the general statute, save as they clearly manifest a different purpose. An intention to depart from a course or policy thus deliberately settled is not lightly to be assumed.

Panama R. Co. v. Johnson, 264 U.S. 375, 384, 390 (1924) (declining to find a "pronounced departure" from prior law absent "terms unmistakeably manifesting" such intent from Congress) (citations omitted).

Third, to hold that surrender under § 1325(a)(5)(C) extinguishes the 910 creditor's unsecured deficiency claim is essentially to convert what was a recourse obligation under non-bankruptcy law into a non-recourse obligation upon the filing of the bankruptcy case. The effect is to disallow the unsecured deficiency claim. Yet, BAPCPA did not add any provision to § 502 of the Bankruptcy Code, which provides the exclusive grounds to disallow a claim, that would now disallow an unsecured deficiency claim of a 910 creditor holding a recourse obligation by converting it into a non-recourse obligation.

Fourth, to hold that a surrender of a vehicle to a 910 creditor under § 1325(a)(5)(C) extinguishes the entire debt owing to the 910 creditor will lead to many anomalous results in Chapter 13. For example, suppose a debtor fails to make monthly payments for a 910 vehicle post-petition as now required under § 1326(a) and, as a result, a 910 creditor obtains relief from the automatic stay. In that circumstance, the 910 creditor upon lift of the stay can then dispose of the collateral, apply the proceeds to its debt and file a deficiency claim that will be allowed under § 502 and must be treated as an unsecured claim in the debtor's Chapter 13 plan. On the other hand, if the same debtor who fails to make monthly payments for the vehicle post-petition simply surrenders the

vehicle under a Chapter 13 plan to the 910 creditor under § 1325(a)(5)(C), that debtor could compel the creditor to accept the vehicle in full satisfaction of the debt and eliminate any unsecured deficiency claim. What policy is served by having such inconsistent results that depend only on whether the 910 creditor obtains possession of its collateral after relief from the stay or after surrender of the collateral under a plan? It is nonsensical to have the disallowance of an unsecured deficiency claim turn on whether the 910 creditor first moved to lift the stay or had its collateral shoved at it by a debtor under a plan or, worse yet, by a debtor who first successfully resists a motion to lift the stay only to then file a plan that says "eat metal" to the 910 creditor! See, e.g., In re Martindale, 125 B.R. 32, 38 (Bankr. D. Idaho 1991) (defining an "eat dirt" plan as one in which "creditors holding liens on real property are compelled to accept a transfer of the real property in part or full satisfaction of their claims"). It can easily be envisioned that if that is now the law, then undersecured 910 creditors will soon be flooding Chapter 13 cases with pre-confirmation motions to lift stay immediately after a petition has been filed rather than run the risk that the debtor will surrender the depreciated collateral to them in a Chapter 13 plan and extinguish their debt. It requires little imagination to predict that undersecured 910 creditors may also soon argue that the "cause" to lift the stay pre-confirmation exists solely by reason of the possibility that the 910 creditor will lose any unsecured deficiency claim it may have upon a debtor's surrender under a plan rather than the creditor gaining relief from the stay.

Reading the hanging paragraph in the manner urged by the Debtors may create other anomalies. For example, if the Debtors can satisfy DaimlerChrysler's entire claim in full by surrender of the Sebring under their plan now, what occurs upon a subsequent dismissal or conversion? Has DaimlerChrysler now essentially been "paid" in full by the surrender of the

-20-

Sebring, such that it will have forever lost the recourse promise of the Debtors to pay the full purchase price even though the Debtors themselves have now abandoned or failed to complete their plan? Will DaimlerChrysler be precluded from asserting an allowed unsecured claim against other property of the estate in the event of conversion to Chapter 7?

## V. Conclusion

Perhaps because of the number of cases that have adopted the Debtors' position, DaimlerChrysler seems to concede that the hanging paragraph prevents it from asserting an unsecured deficiency claim after surrender and disposition of the Sebring under § 1325(a)(5)(C). Instead, DaimlerChrysler asserts that notwithstanding any inability to assert an unsecured deficiency claim after surrender, it still somehow has a right to be paid in full the remaining balance on its "secured" claim after surrender. The Court does not find this position persuasive. It is both conceptually untenable and unnecessary. On a conceptual level, how could DaimlerChrysler continue to have a "secured" claim after disposition of the surrendered collateral? Once the surrendered collateral (i.e., the Sebring) has been disposed of, what property continues to serve as security for this debt? It does not seem to the Court sensible to strain to try to construct a basis for DaimlerChrysler continuing to assert a phantom secured claim after liquidation of its surrendered collateral under § 1325(a)(5)(C). Rather, what makes more sense, and is consistent with both the statutory language and past practice under the Bankruptcy Code, is the conclusion that § 506(a) does not apply to property that a debtor surrenders under § 1325(a)(5)(C) and therefore the hanging paragraph's direction that § 506 not apply to 910 creditors under § 1325(a)(5) works no change in the law with respect to surrender of a vehicle to a 910 creditor. DaimlerChrysler is correct that the result urged by the Debtors would be a sea change from prior practice. But, rather than create a

fictional secured claim after surrender and disposition of the collateral, it simply makes more sense to read the statute as it is written. Section 506(a) does not apply once the estate no longer has an interest in property. Upon surrender of the Sebring, the bankruptcy estate will no longer have an interest in it. Therefore, § 506(a) will not apply. DaimlerChrysler may sell the Sebring under applicable state law, apply the proceeds to its debt, and assert under § 502 an unsecured claim for any deficiency that remains, just as it could have done under non-bankruptcy law before the Debtors' Chapter 13 case. Because the Debtors' plan purports to disallow this unsecured deficiency claim by surrendering the Sebring, the plan cannot be confirmed. The Debtors are certainly free to surrender the Sebring under their plan. What they cannot do is force DaimlerChrysler to forego its right to an allowed unsecured claim for any deficiency that it is entitled to claim after disposition of its collateral under applicable bankruptcy law and § 502. The Court will enter a separate order consistent with this opinion.

**FOR PUBLICATION**

```
Signed on November 17, 2006

                              /s/ Phillip J. Shefferly
                           Phillip J. Shefferly
                           United States Bankruptcy Judge
```

-22-